IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:21-CR-66 |
| TYLER PHAM, | The Hon. Leonie M. Brinkema |
| *Defendant*. | Sentencing: June 28, 2022 |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The defendant, Tyler Pham, comes before the Court for sentencing after pleading guilty to a one-count Indictment in the above-captioned case charging him with conspiracy to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a) and 846. The United States has no objection to the Probation Officer's calculations of the defendant's United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), as set forth in the Presentence Investigation Report (PSR), (Dkt. No. 36), in paragraph 120.

Further, the United States agrees that the defendant has assisted authorities in the prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby allowing the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The Probation Officer has already accounted for this one-level decrease in its Guidelines calculation. PSR ¶ 87. The United States also agrees that the defendant has clearly demonstrated acceptance of responsibility for the offense. The Probation Officer has already accounted for this two-level decrease in the Guidelines

1

calculation. PSR ¶ 86. The United States submits that a sentence of 120 months (the statutory mandatory minimum), below the Guidelines range of 262 to 327 months, is appropriate.[1]

## BACKGROUND

In August 2019, agents from the Federal Bureau of Investigation's (FBI's) Darknet Opioid Task Force began investigating a darknet vendor using the moniker "addy4cheap" that was advertising the sale of Adderall on two darknet markets: the Empire Market and Cryptonia. PSR ¶¶ 36-37, 39. As part of the investigation, agents conducted a series of undercover controlled purchases from "addy4cheap" using cryptocurrency. PSR ¶ 39. Between August 24, 2019, and November 27, 2019, agents conducted 20 controlled purchases from "addy4cheap" resulting in the receipt of 767 tablets for a total approximate weight of 268 grams. PSR ¶ 39. Customer reviews for "addy4cheap" also revealed complaints that the tablets were not Adderall, but rather pressed pills containing methamphetamine. PSR ¶ 37. The peach pills did in fact contain a detectible amount of methamphetamine. PSR ¶ 59.

To avoid detection, the defendant's co-conspirators (1) mailed drug parcels that did not have their true names and addresses listed as the return information, (2) deposited those parcels at various United States Parcel Service ("U.S.P.S.") collection boxes in the Eastern District of Virginia, (3) handled packages in a manner to avoid leaving fingerprints, and (4) operated in the late evening or early morning hours. PSR ¶ 61. Packages mailed by the defendant's co-conspirators resembled those obtained through controlled purchases made by law enforcement through "addy4cheap." PSR ¶ 61.

---

[1] The United States recognizes that the issue of the defendant's safety-valve eligibility may be before the Court at the sentencing hearing and this determination could impact the Guidelines range and the applicability of the statutory mandatory minimum. Accordingly, the government reserves the right to make an updated sentencing recommendation if needed.

During the evening hours of September 24, 2019, at Ronald Reagan Washington National Airport, it was discovered that the defendant was carrying over $30,000 in U.S. currency. PSR ¶ 62. A drug-detecting K-9 alerted to the money carried by the defendant and the money was seized by law enforcement. PSR ¶ 62.

On or about December 9, 2019, pursuant to a search warrant, law enforcement searched the residence of one of the defendant's co-conspirators, Hon Lam Luk. PSR ¶ 63. In that residence, investigators found over 6,000 peach tablets weighing approximately 2.2 kilograms which resemble those advertised on "addy4cheap" vendor pages and those received by law enforcement through controlled purchases. PSR ¶ 63. That residence also contained multiple envelopes, baggies, raisin boxes, a printer, and other materials consistent with the packaging materials used in parcels obtained with controlled purchases from "addy4cheap." PSR ¶ 63. Approximately 400 grams of MDMA tablets, marijuana, vape cartridges, a money-counting machine, and U.S. currency were also found. PSR ¶ 63.

Also on or about December 2019, pursuant to the search warrant, law enforcement searched the residence of the defendant and his wife, Lien Kim Thi Phan. PSR ¶ 64. In that residence, law enforcement found 96 peach tablets resembling those advertised on "addy4cheap" vendor pages and those received during controlled purchases as well as 100 MDMA tablets. PSR ¶ 64. The peach tablets and the MDMA tablets were packaged in black foil bags similar to those received through law enforcement controlled purchases from "addy4cheap." PSR ¶ 64. In that residence was also U.S. currency, two pistols, and one shotgun. PSR ¶ 64.

The Empire Market lists "addy4cheap" as becoming a member on May 24, 2019. PSR ¶ 66. As of December 10, 2019, "addy4cheap" had completed 3,665 sales on the Empire Market and received 2,568 reviews. PSR ¶ 66. These reviews included negative feedback from different

3

customers stating that the tablets sold by "addy4cheap" were pressed and contained methamphetamine. PSR ¶ 66. Each review lists the total amount spent in U.S. dollars by reviewing the customer. PSR ¶ 66. Based on these reviews, as of December 10, 2019, "addy4cheap" had approximately $482,572.10 from its sales on the Empire Market for an approximate 44,872 pills sold. PSR ¶ 66. Cryptonia listed "addy4cheap" as becoming a member on June 29, 2019. As of November 7, 2019, "addy4cheap" had fulfilled 140 transactions on Cryptonia. PSR ¶ 66.

On April 1, 2022, the defendant appeared before the Court and pleaded guilty to Count One of the Indictment charging him with conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a) and 846.

## SENTENCING ANALYSIS

**I.     Law**

The Court consults both the Guidelines and the sentencing factors in 18 U.S.C. § 3553(a) to determine a defendant's appropriate sentence. Although the Guidelines are advisory, district courts are required to "consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Under the required procedures, a "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this section." Paragraph

2 lists four purposes for a sentence: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).  In addition to the purposes of sentencing listed in Section 3553(a)(2), a sentencing court must also consider: (1) the nature of the offense and the defendant's history and characteristics; (2) the kinds of sentences legally available; (3) the advisory sentencing range provided by the Sentencing Guidelines; (4) any relevant policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities; and (6) the need for restitution.  18 U.S.C. § 3553(a).

## II. Guidelines Calculation

The Probation Office has appropriately calculated a total offense level of 39 and criminal history category I for the defendant.  PSR ¶¶ 119-120.  The base offense level based on drug quantity is 36, as stipulated in the defendant's plea agreement.  PSR ¶¶ 6, 79.  Two points were added for obstructing or impeding justice under U.S.S.G. § 3C1.1. PSR ¶ 75.  Four points were added for being assessed as playing an organizer role under U.S.S.G. § 3B1.1(a).  The government concurs with the Probation Officer's application of the two-level reduction for acceptance of responsibility under § 3E1.1(a), and in accordance with the plea agreement, hereby moves for the additional one-point reduction under § 3E1.1(b).  PSR ¶¶ 86-87.

## III.   Section 3553(a) Analysis

Of the sentencing purposes described in 18 U.S.C. § 3553(a)(2), paramount in this case is the need for the defendant's sentence to afford adequate deterrence and to promote respect for the law, reflect the crime's seriousness, and provide just punishment.  The defendant was involved in

distributing a significant quantity of tablets that were a mixture and substance containing a detectable amount of methamphetamine, endangering people in the local community and across the nation.  By any measure, the defendant's offense is serious.

Methamphetamine is a highly addictive drug that has a proven record of destroying families, homes, and communities.  In December 2019, it was reported that "[n]ationally, since late last year, meth[ampethamine] has turned up in more deaths than opioid painkillers like oxycodone and hydrocodone" and that "there were about 13,000 deaths involving meth[amphetamine] nationwide in 2018."[2]  Moreover, "[long-term methamphetamine use has many other negative consequences, including extreme weight loss, addition, severe dental problems ("meth mouth"), intense itching, leading to skin sores from scratching, anxiety, changes in brain structure and function, confusion, memory loss, sleeping problems, violent behavior," paranoia, and hallucinations.[3]  Studies confirm that "even small amounts of methamphetamine can result in many of the same physical effects as those of other stimulants, such as cocaine or amphetamines."[4]

It is also important in this case to account for the nature and circumstances of the offense, and the need to send a message of specific deterrence to this defendant.  The defendant was the connection to the source of the supply for the narcotics.  PSR ¶ 65.  The defendant was also involved from outset of the conspiracy, initially enlisting the services of the other conspirators to contribute to the illegal scheme.  PSR ¶ 50.  For example, according to the investigation, co-

---

[2] Abby Goodnough, *A New Drug Scourge: Deaths Involving Meth and Rising Fact*, N.Y. Times, Dec. 17, 2019, available at https://www.nytimes.come/2019/12/17/health/meth-deaths-opioids.html (last visited June 16, 2022).
[3] National Institution on Drug Abuse, *Drug Facts—Methamphetamine* (available at https://www.drugabuse.gov/publication/drugfacts/methamphetamine) (last visited June 16, 2022).
[4] *Id.*

conspirator Dat Quoc Nguyen created the "addy4cheap" moniker at the request of the defendant. PSR ¶ 49. The defendant then obtained quantities of pills from a source of supply in Texas and, along with his co-conspirators, redistributed them via the U.S. Postal Service to customers accessing the darknet site. PSR ¶ 50. At the request of the defendant, Lien Phan was at one point in the conspiracy responsible for delivering the packaged tablets to USPS collection boxes in and around Fairfax County, Virginia. PSR ¶ 52. To reflect the seriousness of the offense, provide just punishment, and afford adequate deterrence to drug trafficking, a significant prison sentence is appropriate and reasonable.

Six of the defendant's co-conspirators have already been sentenced. Hon Lam Luk, Dat Quoc Nguyen, Trieu Nguyen Hoang, and Son Nguyen were sentenced to 46 months of imprisonment and Duong Nguyen and Lien Kim Thi Phan were sentenced to time served. PSR ¶¶ 29-34. A sentence of 120 months, the mandatory minimum in this case, is warranted in light of the sentences received by co-conspirators.

The defendant is thirty-nine years old and has accepted responsibility for his involvement in the conspiracy. PSR ¶ 76. While he has now accepted responsibility, he travelled to Vietnam between December 22, 2019 and November 16, 2021, going outside the reach of prosecution before returning to the United States. PSR ¶ 75. To his credit, the defendant voluntary returned to the United States and has zero criminal history points. PSR ¶ 91. The defendant's family background reveals that he grew up in a two-parent home, and the defendant described his family as "close-knit." PSR ¶ 97. He stated he "felt all his basic needs were met." PSR ¶ 97. The defendant resided in Vietnam until he was eight, at which time he immigrated to the United States, specifically to the Washington, D.C. metropolitan area, with his family including his nine siblings.

PSR ¶ 97. He reports that he has no mental health issues. PSR ¶ 103. The defendant's strong family ties, unfortunately, did not deter him from engaging in criminal conduct.

The defendant reported he obtained his General Educational Development ("GED"), online, in either 2001 or 2002. PSR ¶ 106. He related that he sometimes works for his brother, who is a real estate advisor. PSR ¶ 109. The defendant stated he earned $22 hourly as a computer technician for CompuCom in Tyson's Corner, Virginia from either 2011 or 2012 until he was laid off in 2019. PSR ¶ 110. Given the defendant's age and work experience, he has the ability to seek and maintain legitimate employment. Thus, the defendant's sentence should be significant so as to deter him from engaging in future criminal conduct, and to deter others who might be tempted to stray from legitimate gainful employment to engage in drug trafficking.

Accordingly, a sentence of 120 months of imprisonment, the mandatory minimum sentence, is appropriate to avoid unwarranted sentencing disparities, to reflect the seriousness of the offense, and to provide just punishment and adequate deterrence.

## CONCLUSION

For the reasons stated herein, the United States submits that a sentence of 120 months is appropriate in this case.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:      /s/
Bibeane Metsch
Assistant United States Attorney

8

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2022, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to counsel of record in this case; and I will further forward an electronic copy to the U.S. Probation Officer assigned to the case.

                                                /s/
                                         Bibeane Metsch
                                         Assistant United States Attorney
                                         United States Attorney's Office
                                         2100 Jamieson Avenue
                                         Alexandria, Virginia 22314
                                         Phone: 703-299-3700
                                         Fax: 703-299-3982
                                         Email: bibeane.metsch@usdoj.gov